75 Cal.Rptr.3d 86 (2008)
162 Cal.App.4th 1
In re VALERIE W. et al., Persons Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Greg W. et al., Defendants and Appellants.
No. D051056.
Court of Appeal of California, Fourth District, Division One.
April 4, 2008.
*88 Maryann M. Milcetic, under appointment by the Court of Appeal, for Defendant and Appellant Greg W.
Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant Star W.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Katharine R. Bird, Senior Deputy County Counsel, for Plaintiff and Respondent.
Valerie N. Lankford, under appointment by the Court of Appeal, San Diego, for Minors Valerie W. and Gregory W.
*87 NARES, J.
Greg W. and S.W. appeal judgments terminating parental rights to their minor children, Valerie W. and Gregory W. (together the children), under Welfare and Institutions Code section 366.26.[1]
On appeal, Greg and S.W. assert the court erred in terminating their parental rights because (1) there is no substantial evidence to support the court's adoptability finding; and (2) the court failed to apply the sibling relationship exception. Subsequent to the filing of the appeal, appellate counsel for the minors (minors' counsel) asserted the viability of the "joint adoption" by the children's caregivers was in doubt. This court has been informed on appeal that the children's caregivers, Vera V., and her adult daughter, Juana P., seek to jointly adopt the children. Minors' counsel also filed a motion asking this court to take additional evidence on this issue, which we ordered considered with the appeal.
We conclude the order terminating parental rights must be reversed because the finding of adoptability was not supported by substantial evidence. The assessment *89 report prepared by the San Diego County Health and Human Services Agency (Agency) for the children was inadequate and failed to consider (a) whether Juana was qualified to adopt them, and (b) whether there was a legal impediment to a joint adoption by Vera and Juana. The report also inadequately assessed Gregory's medical condition. We deny the motion to take additional evidence on appeal. We direct the court on remand to order the Agency to complete an assessment that is in compliance with section 366.21, subdivision (i), and that addresses the deficiencies in the original assessment report identified in this opinion. We also direct the court to hold a new hearing under section 366.26 to select and implement a permanent plan for the children.

FACTUAL AND PROCEDURAL BACKGROUND[2]
In June 2006 two-year-old Valerie and nine-month-old Gregory became dependents of the court under section 300, subdivision (b) and were removed from parental custody. Greg was a heroin addict and had recently relapsed. S.W. had an extensive criminal and substance abuse history. Her parental rights to an older daughter, F.P., had been terminated through dependency proceedings.
The court denied reunification services to S.W., and ordered reunification services for Greg. On the recommendation of the Agency, the court placed the children in the approved home of Vera V., a nonrelative extended family member.
Vera met the family when she was the principal of an elementary school that F.P. attended. At Greg's request, Vera cared for the children for several months following Gregory's birth. Vera lived with her four children, two of whom she had adopted from Liberia through international procedures.
Vera's adult daughter, Juana P., and Juana's partner, Andrea K., provided respite and daycare for the children. Andrea was the adoptive sister of F.P., the children's biological half-sister.
During the initial six-month review period, S.W. did not contact the social worker or visit the children. Greg did not maintain his sobriety. At the six-month review hearing, the court terminated reunification services and set a section 366.26 hearing.
In reports prepared for the section 366.26 hearing, the social worker stated that Valerie, now four years old, was healthy, sociable and doing well in school, but she had behavior problems for which she was receiving therapeutic services. Valerie was very confused about where she was going to live, who her parents were and who would take care of her.
Although the Agency reported three-year-old Gregory was healthy, it also reported he was small for his age, had recently fallen below pediatric growth charts and suffered from asthma. A year earlier, Gregory had a seizure, but tests showed no brain abnormality. The emergency room physician recommended that Gregory undergo a neurological examination to rule out seizure disorders. A developmental evaluation showed Gregory had some delay in speech development, possibly caused by a very small lower jaw and overbite. Because of Gregory's short stature, small lower jaw, seizure and gastrointestinal problems, the public health nurse recommended that Gregory undergo genetic testing.
*90 The Agency indicated Gregory had a pediatric visit scheduled the following month to monitor his below normal growth. If he did not register on the growth charts by that visit, further testing would be necessary. The Agency also reported that Gregory recently had an electroencephalogram (EEG) and was scheduled to "undergo a thorough genetics test as well." Gregory had anemia and additional testing was required to determine its cause. In later addendum reports, however, the Agency did not provide information concerning the results of Gregory's pediatric examination, EEG results, or the status or result of any other medical or developmental test.
The social worker reported that the children were bonded to their caregivers and to the extended family. The report indicated the "caregivers are in the process of completing their home study and have made significant progress.... The caregivers have adopted previously and have had an approved home study for international adoption. [There] is no foreseeable reason that they would not be approved to adopt Valerie and Gregory." (Italics added.) The social worker recommended the court find "that the permanent plan of adoption with the current caregiver is appropriate and is identified as the preferred permanency plan." (Italics added.)
On June 6, 2007, the court granted Vera's application for de facto parent status.
Greg and S.W. each filed a section 388 petition asking the court for placement of the children under a plan of family maintenance services. At a hearing on the section 388 petitions, Valerie's therapist, Kimberly Corbett, Psy.D., testified Valerie possibly had reactive attachment disorder, disinhibited type, as a result of pathogenic parenting from birth through age two. In Dr. Corbett's opinion, Valerie had attachment issues, but was starting to form more secure attachments with her current caregivers.
Dr. Corbett believed both Vera and Juana were the children's foster parents. Dr. Corbett had more contact with Juana than Vera because Juana brought Valerie to her weekly therapy appointments. Valerie wanted to change her last name to Juana's last name, and she no longer wanted to be "Valerie" because "Valerie was bad and bad things happened to Valerie."
The court denied the parents' section 388 petitions. It found that both children were emotionally fragile and needed to become attached to a constant, trustworthy parent. The children, particularly Valerie, trusted Vera and had a strong, nurturing relationship with her. The court stated that the children would face nothing but potential injury if they were removed from Vera "and her daughter."
Other than the evidence presented at the section 388 hearing, the parties presented no additional evidence at the section 366.26 hearing. Greg argued the children might not be adoptable because of their unresolved medical and emotional problems and because the Agency did not assess whether other homes were available to the children if the foster home was not approved for adoption.
Vera asked to address the court. She stated, "I have startedmy daughter and I have started the process of applying for adoption, and we have started the home study process. I am an adoptive mother of two other children, so I have been through the adoptive process before." (Italics added.) Vera informed the court "we have started the adoption process, and we intend to follow through with it should Valerie and Gregory become available. They are very much a part of our family." (Italics added.)
*91 The court found by clear and convincing evidence that the children were likely to be adopted by Vera if parental rights were terminated, noting Vera had taken appropriate steps to start the adoptive process and clearly intended to adopt both children. The court found that adoption was in the children's best interests and there were no exceptions under section 366.26, subdivision (c)(1).[3] The court terminated parental rights and designated Vera as the children's prospective adoptive parent.

APPELLATE PROCEEDINGS
In December 2007 minors' counsel informed the court that the viability of "the joint adoption by the caregivers" was in doubt and requested oral argument on behalf of the children. We then asked the parties to submit simultaneous letter briefs addressing the following issues:
1. Did the Agency identify both the foster parent and her adult daughter as prospective adoptive parents? If so, did the assessment report prepared for the hearing under section 366.26 comply with the requirements under section 366.21, subdivision (i)(4), (5), (6) and (7)?[4]
2. In view of the recommended neurological and genetic testing of Gregory, did the assessment report contain an adequate evaluation of his medical condition as required by section 366.21, subdivision (i)(3)?
3. What is the legal authority for the joint adoption of a child by two persons who are not married to each other and who are not partners in a civil union with each other?
4. Is there any legal impediment to the joint adoption of the children by the foster parent and her adult daughter?
On January 28, 2008, minors' counsel filed a motion asking this court to take additional evidence through her sworn declaration under section 909 of the Code of Civil Procedure. (See Cal. Rules of Court, rule 8.252(c) [a party may request the reviewing court to take evidence on appeal].) [5] Greg and S.W. did not oppose the motion, but the Agency did. We ordered the motion to be considered with the appeal.

DISCUSSION

I. MINORS' MOTION TO TAKE ADDITIONAL EVIDENCE UNDER SECTION 909 OF THE CODE OF CIVIL PROCEDURE

Minors' counsel asks this court to take additional evidence under Code of Civil Procedure section 909 of the facts contained in her declaration. The Agency objects to admission of the proffered postjudgment evidence on the grounds that it is untested, inadmissible hearsay; its admission would violate due process; it is evidence that was not before the juvenile court at the time it rendered its decision; and it contravenes the holding of the California Supreme Court in In re Zeth S. (2003) 31 Cal.4th 396, 2 Cal.Rptr.3d 683, 73 P.3d 541 (Zeth S.).
*92 In Zeth S., supra, 31 Cal.4th 396, 2 Cal.Rptr.3d 683, 73 P.3d 541, an appeal challenging the juvenile court's finding that the beneficial relationship exception to adoption did not apply, appellate counsel sought to augment the record on appeal with postjudgment evidence that the parent was currently interacting with the child and the relative caretaker had felt pressured by the social services agency to agree to adopt the child. (Id. at pp. 403-404, 2 Cal.Rptr.3d 683, 73 P.3d 541.) The California Supreme Court held the Court of Appeal erred in receiving and considering the postjudgment evidence. (Id. at pp. 404, 414, 2 Cal.Rptr.3d 683, 73 P.3d 541.) The court in Zeth S. set forth the general rule that:
"`[A]n appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an `essential distinction between the trial and the appellate court ... that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law....' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal. `Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule 23 of the California Rules of Court, the authority should be exercised sparingly. [Citation.] Absent exceptional circumstances, no such findings should be made. [Citation.]' [Citations.]" (Zeth S., supra, 31 Cal.4th at p. 405, 2 Cal.Rptr.3d 683, 73 P.3d 541, italics added.)
Zeth S. also made it clear that "[t]here is no blanket exception to the general rule for juvenile dependency appeals. Review of such appeals is governed by generally applicable rules of appellate procedure, with proper deference to be paid to the factual findings and uncontested rulings of the juvenile court, and all appropriate inferences to be drawn in favor of the judgment below." (Zeth S., supra, 31 Cal.4th at p. 405, 2 Cal.Rptr.3d 683, 73 P.3d 541.) Only under exceptional circumstances may an appellate court properly receive and consider postjudgment evidence that was not before the juvenile court. (Id. at p. 400, 2 Cal. Rptr.3d 683, 73 P.3d 541.)
This case does not present any exceptional circumstances warranting our departure from the general rules of appellate procedure to consider postjudgment evidence. Minors' counsel is asking us to revisit what are essentially substantive evidence issues with new evidence and make new factual determinationsa task that is better suited for the trial court than for an appellate court. "The statutory scheme does not authorize a reviewing court to substitute its own judgment as to what is in the child's best interests for the trial court's determination in that regard, reached pursuant to the statutory scheme's comprehensive and controlling provisions." (Zeth S., supra, 31 Cal.4th at p. 410, 2 Cal.Rptr.3d 683, 73 P.3d 541.) Further, the record already prepared is adequate to decide the issues presented namely, whether substantial evidence supports the court's finding on adoptability. We therefore deny the motion to take additional evidence on appeal.

II. ADOPTABILITY

A. Introduction

Greg contends insufficient evidence supports the court's finding that the children were likely to be adopted within a reasonable *93 time. S.W. joins in Greg's argument. Greg asserts the evidence shows Valerie was emotionally fragile and her behaviors were deteriorating, and Gregory had unresolved neurological and genetic issues that required further testing. He further asserts the Agency's assessment report does not constitute substantial evidence of the children's adoptability because it contained only limited information concerning the prospective adoptive parents, who did not live together, and the Agency did not report on the nature of each caregiver's relationship to the children, the children's living arrangements, and whether other families were interested in adopting the children.
In supplemental briefing, S.W. contends the Agency did not specifically identify Vera and Juana as the children's prospective adoptive parents, and the record does not clearly reflect who was seeking to adopt the children. She asserts the children are not generally adoptable; thus, the Agency must identify the prospective adoptive parents to allow the court to assess the suitability of the prospective adoptive home.
Greg asserts the Agency did not specifically identify Vera and Juana as the children's prospective adoptive parents and did not make the court aware of the proposed joint adoption. He states the issue was raised for the first time during closing argument at the section 366.26 hearing when county counsel referred to Vera and Juana as "joint caregivers, who wish to adopt," and Vera told the court that she and Juana had together started the adoption process. Greg contends the inadequate assessment report left many unanswered questions concerning the children's proposed adoption and did not substantially comply with section 366.21, subdivision (i)(3), (4), (5), (6) and (7). S.W. and minors' counsel join in Greg's argument.
Minors' counsel maintains the Agency did not expressly state in its reports that both Vera and Juana were prospective adoptive parents, but the record permits the inference the Agency intended to permit them to jointly adopt the children. Minors' counsel argues the assessment report contains little of the relevant information required by section 366.21, subdivision (i)(4) through (7), and cannot support a finding the children were likely to be adopted within a reasonable time. She also asserts Gregory had and continues to have significant medical issues for which medical professionals recommended genetic and neurological testing, and the Agency did not provide any test results in its assessment report as required by section 366.21, subdivision (i)(3). Minors' counsel asserts the children's best interests will be served by remanding the matter to the trial court for a new hearing on the issue of the children's adoptability.
The Agency now admits Vera and Juana applied to adopt the children jointly. It argues that its assessment report need only be in substantial compliance with statutory requirements, and asserts that where an assessment is deemed incomplete, a reviewing court looks only at the totality of the evidence and whether any deficiencies were significant. The Agency maintains the court had the information it needed to make an informed decision regarding the children's best interests, including the fact that one of the prospective adoptive parents was a licensed foster parent and at one time had an approved home study for international adoption. With respect to Gregory's test results, the Agency argues that Gregory's caregivers were involved in his medical treatment and were aware of the concerns about his condition. It contends the totality of the evidence provided to the court constitutes a sufficient basis for a finding that Gregory did *94 not suffer from severe problems that impacted his adoptability.

B. Statutory Framework

Whenever a dependency case is referred for a selection and implementation hearing, the court is required to direct the Agency to prepare an assessment as part of its report to the court. (§§ 361.5, subd. (g) [referral from disposition hearing], 366.21, subd. (i) [referral from six-month or 12-month review hearing], 366.22, subd. (b) [18-month review hearing]; 366.3, subd. (h) [postpermanency plan review hearing].)[6] The required content of an assessment report is the same no matter when the referral to a section 366.26 hearing is made. (Ibid.)
The assessment report is "a cornerstone of the evidentiary structure" upon which the court, the parents and the child are entitled to rely. (In re Crystal J. (1993) 12 Cal.App.4th 407, 413, 15 Cal.Rptr.2d 613; see In re Linda W. (1989) 209 Cal.App.3d 222, 226-227, 257 Cal.Rptr, 52.) The Agency is required to address seven specific subjects in the assessment report, including the child's medical, developmental, scholastic, mental, and emotional status. (§ 366.21, subd. (i).) In addition, the assessment report must include an analysis of the likelihood that the child will be adopted if parental rights are terminated. (§ 366.21, subd. (i)(1), (2), (3), (7); In re Crystal J., supra, 12 Cal.App.4th at p. 411, 15 Cal.Rptr.2d 613.) The assessment report must also contain:
"A preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent or legal guardian, particularly the caretaker, to include a social history including screening for criminal records and prior referrals for child abuse or neglect, the capability to meet the child's needs, and the understanding of the legal and financial rights and responsibilities of adoption and guardianship. [...]" (§ 366.21, subd. (i)(4).)
"The relationship of the child to any identified prospective adoptive parent or legal guardian, the duration and character of the relationship, the motivation for seeking adoption or guardianship, and a statement from the child concerning placement and the adoption or guardianship, unless the child's age or physical, emotional, or other condition precludes his or her meaningful response, and if so, a description of the condition." (§ 366.21, subd. (i)(5).)
"A description of efforts to be made to identify a prospective adoptive parent or legal guardian, including, but not limited to, child-specific recruitment and listing on an adoption exchange within the state or out of the state." (§ 366.21, subd. (i)(6).)
The Agency must provide the trial court with the assessment report at least 10 calendar days before the section 366.26 hearing. (Rule 5.725(c).)[7] To fulfill the legislative mandate "to provide stable, permanent homes for these children," the *95 court is required to consider the assessment report as specified in sections 361.5, 366.21 or 366.22 and receive other evidence that the parties may present. (§ 366.26, subd. (b); see also § 366.26, subd. (c)(1).)
At the time of the section 366.26 hearing at issue here, the statutory scheme allowed the court to either (1) terminate parental rights and free the children for adoption, (2) identify adoption as the permanency plan goal and continue the hearing for no more than 180 days, (3) appoint a legal guardian or (4) order the children's placement in long-term foster care. (Former § 366.26, subd. (b).) If a child is adoptable, there is a strong preference for adoption over the alternative permanency plans. (San Diego County Dept. of Social Services v. Superior Court (1996) 13 Cal.4th 882, 888, 55 Cal.Rptr.2d 396, 919 P.2d 1329; In re Zachary G. (1999) 77 Cal.App.4th 799, 808-809, 92 Cal.Rptr.2d 20.)
A finding of adoptability requires "clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time." (In re Zeth S., supra, 31 Cal.4th at p. 406, 2 Cal.Rptr.3d 683, 73 P.3d 541.) The question of adoptability usually focuses on whether the child's age, physical condition and emotional health make it difficult to find a person willing to adopt that child. (In re Sarah M. (1994) 22 Cal.App.4th 1642, 1649, 28 Cal.Rptr.2d 82.) If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home. (In re Scott M. (1993) 13 Cal.App.4th 839, 844, 16 Cal.Rptr.2d 766.) When the child is deemed adoptable based solely on a particular family's willingness to adopt the child, the trial court must determine whether there is a legal impediment to adoption. (In re Carl R. (2005) 128 Cal.App.4th 1051, 1061, 27 Cal.Rptr.3d 612.)
On review, we determine whether the record contains substantial evidence from which the juvenile court could find clear and convincing evidence that the child was likely to be adopted within a reasonable time. (In re Gregory A (2005) 126 Cal.App.4th 1554, 1562, 25 Cal.Rptr.3d 134; see also Zeth S., supra, 31 Cal.4th at p. 406, 2 Cal.Rptr.3d 683, 73 P.3d 541.) The evidence must be sufficiently strong to command the unhesitating assent of every reasonable mind. (In re Jerome D. (2000) 84 Cal.App.4th 1200, 1205-1206, 101 Cal. Rptr.2d 449.) We give the court's adoptability finding the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of the judgment. (In re Autumn H. (1994) 27 Cal.App.4th 567, 573, 32 Cal.Rptr.2d 535.)
C. The Assessment Report Did Not Substantially Comply with Section 366.21, Subdivision (i)
Here, the assessment report failed in most respects to comply with the detail specified in section 366.21, subdivision (i), specifically enumerations (3), (4), (5) and (6) of that subdivision. As required by section 366.21, subdivision (i)(3), information about the results of Gregory's EEG and his most recent pediatric visit was not included in any of the addendum reports, nor were the parties and the court provided any information about the testing that was pending at the time of the initial section 366.26 report.
Although the record contains conflicting and unclear information regarding the identity of the prospective adoptive parents, the Agency's supplemental briefing confirms the Agency was aware that Vera and Juana intended to jointly adopt the children. Nevertheless, the section 366.26 report and addendums do not contain an assessment of the eligibility and commitment of "any identified prospective adoptive *96 parent" (applicant). (§ 366.21, subd. (i)(4).) The report does not include a social history for each applicant, a description of the relationship between the children and each applicant, the motivation of each applicant for seeking adoption and, as relevant here, the motivation of the applicants for seeking a "joint adoption." (§ 366.21, subd. (i)(4), (5).) The Agency's statement the "caregivers have adopted previously and have had an approved home study for international adoption" was not accurate. Juana was not an adoptive parent and did not have an approved home study.
The Agency is also required to assess the capability of any identified prospective adoptive parent to meet the child's needs. (§ 366.21, subd. (i)(4).) This requirement presupposes the Agency has identified the child's needs. Where, as here, the record suggests the child has been or will be tested for a serious genetic or neurological disorder, a lack of evidence concerning the child's condition, prognosis and treatment needs, if any, undermines the basis for the determination that a prospective adoptive parent is capable of meeting that child's needs.
Finally, the assessment report did not address whether the Agency made other efforts to identify a prospective adoptive parent or legal guardian. (§ 366.21, subd. (i)(1)(6).) Significantly the Agency did not assess whether either Vera or Juana would be willing and able to adopt the children as a single parent in the event the proposed joint adoption could not be approved.
"Deficiencies in an assessment report surely go to the weight of the evidence, and if sufficiently egregious may impair the basis of a court's decision to terminate parental rights." (In re Crystal J., supra, 12 Cal.App.4th at p. 413, 15 Cal.Rptr.2d 613) Here, reviewing the totality of the evidence before the court, including reports and testimony presented at the disposition hearing, the six-month review hearing, the section 388 and section 366.26 hearings, and considering Vera's statements to the court, we conclude the deficiencies in the assessment report were significant. We now discuss whether those deficiencies were sufficiently egregious to undermine the basis of the court's decision to select adoption as the children's preferred permanent plan and to terminate parental rights. (In re Crystal J., supra, at p. 413, 15 Cal.Rptr.2d 613.)

D. The Inadequate Assessment Report Undermines the Court's Decision to Select Adoption As The Children's Permanent Plan

1. The Finding of Adoptability Is Not Supported by Substantial Evidence

The Agency argues the court could consider the section 366.26 report and Vera's status as a licensed foster parent and an adoptive parent of two other children in making its adoptability finding. It points out that a licensed foster parent must submit continuing evidence of her character, criminal record clearance, employment history and financial resources. (Health & Saf.Code, §§ 1520, subds. (b), (c), 1521.6.) However, as the Agency implicitly concedes, no such information exists as to Juana, who was not a licensed foster parent, had not previously adopted, and did not have an approved home study. Nothing in the record indicates Vera was willing and able to adopt the children as a single parent, should Juana be found ineligible to adopt. Because the Agency did not assess Juana's ability and willingness to adopt, substantial evidence does not support a finding that Juana was likely to adopt the children within a reasonable time.
*97 Further, the incomplete assessment of Gregory's condition undermines the court's determination that Gregory is adoptable. We are not persuaded by the Agency's argument that the "totality" of the evidence supports a finding that Vera and/or Juana were able to meet Gregory's needs. Gregory's needs are not identified and documented in the required reports. The court and the parties were not informed of Gregory's diagnosis or possible diagnoses, prognosis or any needs for treatment or special care. Without this crucial information, the court was foreclosed from assessing whether each prospective adoptive parent had "the capability to meet [Gregory's] needs, and the understanding of the legal and financial rights and responsibilities of adoption." (§ 366.21, subd. (i)(4).)
The deficiencies in the assessment report were significantly egregious to undermine the basis of the court's decision. (In re Crystal J., supra, 12 Cal.App.4th at p. 413, 15 Cal.Rptr.2d 613.) We conclude the court's finding of adoptability is not supported by substantial evidence. (In re Gregory A, supra, 126 Cal.App.4th at p. 1562, 25 Cal.Rptr.3d 134; In re Jerome D., supra, 84 Cal.App.4th at pp. 1205-1206, 101 Cal.Rptr.2d 449.)

2. The Inadequate Assessment Report Did Not Allow the Court to Consider Whether There Was a, Legal Impediment to Adoption

When a child is deemed adoptable based solely on a particular family's willingness to adopt the child, the trial court must determine whether there is a legal impediment to adoption. (In re Carl R., supra, 128 Cal.App.4th at p. 1061, 27 Cal. Rptr.3d 612.) No such determination was made here.
The court made a specific finding of adoptability when it determined the children were likely to be adopted by Vera. However, neither the Agency nor Vera and Juana intended to proceed with Vera as the children's sole adoptive parent. We cannot determine from the record whether the court was aware of the Agency's plan to allow Vera and Juana to jointly adopt the children.
Vera was the children's foster parent, In her de facto parent application, Vera represented that she was the children's primary caregiver. However, the record also shows Vera relied on Juana for the children's daycare and respite care, and Juana played a primary role in the children's daily care throughout the proceedings. Juana was responsible for Valerie's therapy appointments. Juana's partner also participated in the children's daily care. Valerie wanted to change her last name to Juana's last name. From this we may infer Valerie identified Juana as a parental figure.
When discussing the likelihood of adoption in its section 366.26 report, the Agency referred to the caregivers, but in its recommended findings the Agency asked the court to approve the permanent plan of adoption with the current caregiver. In closing argument at the section 366.26 hearing, county counsel referred to Vera and Juana as "joint caregivers, who wish to adopt." When minors' counsel asked the court to designate Vera as the children's prospective adoptive parent, county counsel did not object or ask the court to also designate Juana as a prospective adoptive parent. Because the Agency did not clearly detail the plan for the joint adoption of the children by Vera and Juana in its assessment report, the court was precluded from determining whether there was a legal impediment to adoption, including whether the proposed plan was in the best interests of the children.
This appeal raises serious questions regarding the ability of a mother and her adult daughter to jointly adopt a dependent *98 child. Our research has revealed no authority as to whether more than one person, other than a husband and wife or persons currently or formerly in a domestic partnership or similar arrangements, are entitled to jointly adopt. However, the question whether there is a legal impediment to Vera and Juana's proposed joint adoption must first be addressed by the trial court upon an adequate record.
Because substantial evidence does not support a finding of adoptability, we remand the case to the trial court to determine whether the minors are adoptable based on an assessment report prepared in full compliance with section 366.21, subdivision (i) and other evidence that the parties may present (§ 366.26, subds. (b), (c)(1)), and after determining whether there is a legal impediment to adoption in view of the statutory framework for the adoption of a dependent child.

F. Sibling Relationship Exception

Because we reverse the judgments terminating parental rights on other grounds, we need not address Greg's contention the court erred when it did not apply the sibling relationship exception under section 366.26, subdivision (c)(1)(E). (In re Salvador M. (2005) 133 Cal.App.4th 1415, 1422,' 35 Cal.Rptr.3d 577.)

DISPOSITION
The judgments are reversed. The court is directed to order the Agency to complete an assessment in compliance with section 366.21, subdivision (i). The court is further directed to hold a new hearing under section 366.26 to select and implement a permanent plan for the children.
WE CONCUR: McCONNELL, P.J., and McINTYRE, J.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise specified.
[2] The early history of the case is detailed in this court's opinion, In re Valerie W. (Dec. 4, 2006, D048926, 2006 WL 3480395 [nonpub. opn.]). Here, we briefly review the background of the case and focus on the proceedings at issue in this appeal.
[3] Effective January 1, 2008, the Legislature amended and renumbered section 366.26, subdivision (c)(1). (Stats.2006, ch. 838, § 52.) Because the proceedings at issue here occurred before the statutory change, we refer to the earlier version of the statute.
[4] Effective January 1, 2008, the Legislature amended and renumbered section 366.21, subdivision (i). (Stats.2007, ch. 583, § 26.5.) Because the proceedings at issue here occurred before the statutory change, we refer to the earlier version of the statute.
[5] All further rule references are to the California Rules of Court.
[6] Here, the referral to the section 366.26 hearing was made after the initial six-month review hearing. Therefore, further references in this opinion are to section 366.21, subdivision (i).
[7] The Agency must provide copies of its assessment report to each parent or guardian and all counsel of record, and provide a summary of the recommendations to the present custodians of the child, to any CASA volunteer, and to the tribe of an Indian child, at least 10 calendar days before the section 366.26 hearing. (Rule 5.725(c).)

Rule 5.725(c) refers to "an assessment report under section 366.21(i)." We believe the rule also applies to assessment reports under sections 361.5, subdivision (g), 366.22, subdivision (b) and 366.3, subdivision (h).