Filed 5/31/13  In re Katelyn P. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re KATELYN P., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. CHRISTINA P., Defendant and Appellant. | D062898 (Super. Ct. No. NJ014348) |

APPEAL from an order of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Christina P. appeals an order terminating her parental rights to her daughter, Katelyn P., under Welfare and Institutions Code section 366.26.[1]  She contends the assessment prepared by the San Diego County Health and Human Services Agency for

_____

1   Unless otherwise indicated, further references are to the Welfare and Institutions Code.

the section 366.26 hearing was inadequate and there is not substantial evidence to support the finding that Katelyn was likely to be adopted within a reasonable time. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Five-year old Katelyn P. is the daughter of Christina P. In August 2010, Katelyn was adjudicated a dependent of the juvenile court due to her mother's inability to provide regular care to her.[2] Christina suffers from a serious mental health disorder and was repeatedly institutionalized or incarcerated during Katelyn's dependency proceedings. According to her evaluating psychologist, it was highly unlikely that Christina would ever attain adequate psychological functioning to permit her to safely parent a young child.

In April 2012, at the 12-month review hearing, the court terminated reunification services, set a section 366.26 hearing and ordered the Agency to prepare an assessment as required by section 366.21, subdivision (i). The section 366.26 hearing was held on October 10, 2012. The court received the Agency's section 366.26 report, which included the assessment, and addendum reports in evidence. The court accepted Christina's stipulated testimony.

---

[2] On our own motion, we take judicial notice of this court's opinion *In re Katelyn P*. (Feb. 28, 2011, D058104) [nonpub]. This opinion details the events leading to Katelyn's detention in protective custody in June 2010 to the jurisdictional and dispositional hearings in August 2010.

The Agency reported that Katelyn was a healthy, curious and energetic four-year old without developmental delays or concerns. Katelyn had excellent language skills and was becoming fluent in English and French. She occasionally had temper tantrums when redirected.

During the dependency proceedings, Katelyn had four placements. She was placed in a foster care home from June to December 2010. In December, Katelyn was placed in the care of her maternal grandfather, William P., for approximately three weeks. When issues arose concerning Katelyn's care by other family members while her grandfather was at work, the Agency returned Katelyn to her first foster home. In November 2011, the Agency placed Katelyn in a concurrent family foster home with caregivers who were willing to provide a permanent home to her if needed.

Katelyn had lived with her mother in the home of her maternal grandfather until she was almost two and a half years old, when dependency proceedings were initiated. When not at work, Katelyn's grandfather was her primary caregiver. He maintained regular contact with Katelyn throughout her dependency proceedings. They visited twice a week for four hours. Later, because of financial pressures, the grandfather reduced their visits to once a week. Currently, he was visiting Katelyn twice a month. Katelyn enjoyed her visits with her grandfather. He read to her and took her to the library, park and pool. They went on walks together and attended church. Katelyn's caregivers were willing to continue to facilitate contact between Katelyn and her grandfather if they became her adoptive parents.

3

According to the social worker, Katelyn had formed a loving attachment to her caregivers, who loved her unconditionally. They provided a safe, stable and nurturing home to Katelyn and were fully committed to making her a permanent part of their family through adoption. They had an approved adoptive home study. If for some reason they were unable to adopt her, there were 20 other families in San Diego County with approved adoptive home studies who were interested in adopting a child like Katelyn.

The social worker reported that Christina had not had any contact with Katelyn since approximately February 2011. In stipulated testimony, Christina said she had a visit with Katelyn on October 9, 2012, the day before the hearing, and would like to have continued contact with her daughter.

The court found by clear and convincing evidence that Katelyn was likely to be adopted within a reasonable time if parental rights were terminated (adoptability finding). The court also found that Christina did not maintain regular visitation and contact with Katelyn, and Katelyn's alleged father did not establish any relationship with her. The court terminated parental rights and designated the caregivers as Katelyn's prospective adoptive parents.

## DISCUSSION

Christina contends the Agency did not properly assess the importance to Katelyn of her relationship with her grandfather and the emotional effect the loss of that relationship would have on her. Citing *In re Valerie W*. (2008) 162 Cal.App.4th 1

4

(*Valerie W.*), Christina argues this is a significant piece of missing information and therefore there is not substantial evidence to support the adoptability finding. She states that in view of Katelyn's positive relationship with her grandfather, a plan of guardianship would be in her best interests.

A

*Statutory Requirements and Standard of Review*

Whenever the court orders a permanency plan selection and implementation hearing under section 366.26, the court is required to direct the social services agency to prepare an assessment as part of its report to the court. "The assessment is a 'cornerstone of the evidentiary structure' upon which the court, the parents and the child are entitled to rely. [Citations.] The Agency is required to address seven specific subjects in the assessment report, including the child's medical, developmental, scholastic, mental and emotional status. [Citation.] In addition, the assessment report must include an analysis of the likelihood that the child will be adopted if parental rights are terminated. [Citations.]" (*Valerie W.*, *supra*, 162 Cal.App.4th at p. 11.)

As relevant here, the social worker is also required to include in the assessment: "A review of the amount of and nature of any contact between the child and his or her parents or legal guardians and other members of his or her extended family since the time of placement. . . . '[E]xtended family' for the purpose of this subparagraph shall include, but not be limited to, the child's siblings, grandparents, aunts, and uncles." (§ 366.21, subd. (i)(1)(B).)

5

"[E]ven if the assessment is incomplete in some respects, the court will look to the totality of the evidence; deficiencies will go to the weight of the evidence and may ultimately prove insignificant." (*In re John F*. (1994) 27 Cal.App.4th 1365, 1378.) On review, we determined whether the record contains substantial evidence from which the juvenile court could find by clear and convincing evidence that the child was likely to be adopted within a reasonable time if parental rights were terminated. We give the court's adoptability finding the benefit of every reasonable inference and resolve any evidentiary conflicts in favor if the judgment. (*Valerie W*., *supra*, 162 Cal.App.4th at p. 13.)

B

*Christina Has Forfeited the Argument the Assessment Was Inadequate*

"A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221 (*Dakota H*.).) The record shows that not only did Christina fail to object to the adequacy of the assessment, she relied on the assessment in arguing that Katelyn was not adoptable in part because she was clearly bonded with her grandfather. Christina did not object to the adequacy of the assessment in the juvenile court and has forfeited any such objection on appeal. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1317.)

Even if forfeiture did not apply, we would not be persuaded by the argument the assessment lacked an adequate discussion of the amount and nature of any contact between Katelyn and her grandfather since the time of placement. (§ 366.21, subd. (i)(1)(B).) This case is not similar to *Valerie W*., in which this court determined the assessment failed in most respects to comply with the statutory requirements of section

366.21, subdivision (i). (*Valerie W.*, *supra*, 162 Cal.App.4th at p. 13.) In that case, one of the children had unresolved neurological and genetic issues that required further testing to properly assess whether he (and his sister, as a sibling group) were generally adoptable. In addition, the *Valerie W.* record contained conflicting and unclear information about the circumstances of the prospective adoptive parent or parents. (*Id.* at pp. 13-14.)

Here, the assessment clearly identifies the prospective adoptive parents and fully assesses their circumstances. The social worker describes the consistent contact between Katelyn and her grandfather from the beginning of the case. The visits continued to be unsupervised and Katelyn enjoyed visiting with her grandfather. The social worker said that future visitation with Katelyn's parents and extended family members may be appropriate for Katelyn, if consistent with her best interests. The caregivers were facilitating the visits between Katelyn and her grandfather and were willing to continue to do so. Although the assessment of the contact between Katelyn and her grandfather is minimal, it complies with section 366.21, subdivision (i)(1)(B). Had Christina raised the issue in juvenile court, she could have cross-examined the social worker and/or presented additional evidence about the amount and nature of the contact between Katelyn and her grandfather. (See *Dakota H.*, *supra*, 132 Cal.App.4th at pp. 221-222 [discussing forfeiture].)

C

*There Is Substantial Evidence to Support the Adoptability Finding*

A finding of adoptability requires "clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time." (*In re Zeth S.* (2003) 31 Cal.4th 396, 406; § 366.26, subd. (c)(1).) The question of adoptability usually focuses on whether the child's age, physical condition and emotional health make it difficult to find a person willing to adopt that child. (*In re Sarah M*. (1994) 22 Cal.App.4th 1642, 1649.) If the child is considered generally adoptable, there is no need to examine the suitability of a prospective adoptive home. (*In re Scott M*. (1993) 13 Cal.App.4th 839, 844.)

The record contains substantial evidence from which the juvenile court could find clear and convincing evidence that the child was likely to be adopted within a reasonable time. Katelyn's caregivers wanted to adopt her. They said they were "[100 percent] committed; she is our little girl." They had an approved adoptive home study. The social worker also identified 20 families in San Diego County that were interested in adopting a child like Katelyn. Thus, the evidence supports the court's finding that Katelyn was generally and specifically adoptable.

Further, the factual underpinning of Christina's argument—that Katelyn was not adoptable because of the emotional turmoil she would suffer from the loss of her relationship with her grandfather—is not supported by the record. The record shows the caregivers would continue to facilitate Katelyn's relationship with her grandfather as long as it was in her best interests. The court did not err when it found that Katelyn was adoptable and terminated parental rights.

DISPOSITION

The order is affirmed.

IRION, J.

WE CONCUR:

McDONALD, Acting P. J.

AARON, J.