Filed 7/24/15  In re Alejandra T. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ALEJANDRA T., a Person Coming Under the Juvenile Court Law. | B259180<br><br>(Los Angeles County Super. Ct. No. CK80340) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAMIEN T.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Damien T. (father) appeals from an order terminating parental rights with respect to his daughter Alejandra T. under Welfare and Institutions Code section 366.26.[1] Specifically, father challenges the juvenile court's adoptability finding. Because there is substantial evidence to support the juvenile court's finding, we affirm the order.

**FACTUAL AND PROCEDURAL SUMMARY**

In June 2012, Claudia O. (mother) gave birth to Alejandra T.,[2] who was born approximately seven weeks premature and weighed only four pounds. Alejandra was placed in the neonatal intensive care unit. The hospital contacted the Department of Children and Family Services (DCFS) based upon mother's prior DCFS history and her history with drug usage. When Alejandra was six days old, mother left her at the hospital without making plans for her care or supervision, and did not inform the hospital or DCFS of her whereabouts.

DCFS filed a section 300 petition based upon mother and father's history of domestic violence (counts a-1 and b-2), mother and father's history of illicit drug use (counts b-1 and b-3), and mother's abandonment of Alejandra at the hospital six days after the child's birth (counts b-4 and g-1). In September 2012, the juvenile court found that Alejandra was a person described by section 300, subdivisions (a) and (b), and detained her from mother and father. The court sustained the section 300 petition, declared Alejandra a dependent of the court, and ordered family reunification services.

Mother made no contact with DCFS between December 2012 and February 2013. During this time, a social worker received a medical report which indicated that mother was 25 weeks pregnant and her urine had tested positive for methamphetamine and marijuana. After numerous attempts to reach mother through family members, DCFS received a voice message from her in February 2013. The message did not indicate a

---

[1] Subsequent statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

2

return phone number. In the same month, father was arrested and incarcerated at the men's central jail in Los Angeles. As a result, he was not able to participate in domestic violence prevention or drug treatment services. At the section 366.21, subdivision (e) hearing held in September 2013, the court terminated reunification services as to father and mother.

In November 2013, Alejandra underwent a medical exam. The doctor reported a "[n]ormal physical exam," "[n]ormal growth and development," and "[n]o behavioral concerns." In February 2014, Alejandra's foster mother expressed concern about Alejandra's speech after observing that she did not "clearly speak words" and had not "developed an age appropriate vocabulary." A month later, DCFS reported that Alejandra "appear[ed] to be meeting developmental milestones in an age appropriate manner," and "developed appropriate bonding with her foster mother and interpersonal relationships with the other children in the home."

In April 2014, the court ordered that Alejandra be assessed by the Regional Center "to address concerns about her speech development." Later that month, Alejandra and her younger half-brother, David R., were matched with prospective adoptive parents, Mr. and Mrs. S. After several visits with Mr. and Mrs. S., Alejandra and David began residing with them. The adoptive parents reported that the children were doing well with "no reported issues or concerns." DCFS reported that "David and Alejandra appear very happy in the presence of Mr. and Mrs. S. They smile when spoken to and seek them out for attention and comfort." Regarding Alejandra's speech development, DCFS noted, "She is beginning to verbalize more words and is able to communicate her basic needs." It also reported that the prospective adoptive parents "fully understand the commitment that adoption entails and state they are eager to move forward with the adoption process."

The Regional Center completed an intake assessment of Alejandra in August 2014, and approved her for a speech and language evaluation. In September 2014, DCFS reported that Alejandra qualified for Regional Center services, but required authorization to receive those services from the guardians holding education rights. It was recommended that Mr. and Mrs. S. be granted authority to make such decisions. The

record includes no subsequent information about the results of the speech and language evaluation, whether Mr. and Mrs. S. became holders of Alejandra's education rights, or whether Alejandra began receiving services from the Regional Center.

At the September 15, 2014 section 366.26 hearing, the court terminated mother and father's parental rights over Alejandra. It also found by clear and convincing evidence that Alejandra would likely be adopted within a reasonable time. There was no objection to the court's adoptability finding.

This timely appeal followed.

## DISCUSSION

### I

Section 366.26, subdivision (c)(1) provides in part, "If the court determines, based on the assessment provided as ordered under subdivision (i) of Section 366.21, subdivision (b) of Section 366.22, or subdivision (b) of Section 366.25, and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." The juvenile court's adoptability finding under that provision "focuses on the *minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.]" (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.)

"On appeal, we review the evidence in the light most favorable to the [juvenile] court's order, drawing every reasonable inference and resolving all conflicts in support of the judgment. [Citation.] An appellate court does not reweigh the evidence. [Citation.] Rather, we must determine whether there is substantial evidence from which a reasonable trier of fact could by clear and convincing evidence find a factual basis for the finding as to the child's adoptability. [Citation.]" (*In re Marina S.* (2005) 132 Cal.App.4th 158, 165.)

Father challenges only the adoptability finding, arguing that the results of Alejandra's intake assessment and speech and language evaluation should have been

4

considered in the juvenile court's finding.  The record does not indicate that these results were presented to the juvenile court, nor does it indicate whether the prospective adoptive parents became educational rights holders over Alejandra in order to approve Regional Center services.  Father, relying on *In re Valerie W.* (2008) 162 Cal.App.4th 1 (*Valerie W.*), contends the juvenile court could not make its adoptability finding without considering the results of the intake assessment and speech and language evaluation. *Valerie W.* involved two children, Valerie and Gregory, and their potential adoption by a woman and her adult daughter.  (*Id.* at p. 5.)  Gregory, though reported to be healthy, suffered from asthma and had suffered a seizure the year before.  (*Id.* at pp. 5-6.)  A neurologist recommended that he undergo a neurological examination to rule out seizure disorders.  (*Id.* at p. 6.)  DCFS reported that Gregory recently had an electroencephalogram (EEG) and was scheduled to undergo a genetic test in the near future.  (*Ibid.*)  DCFS also indicated that Gregory had anemia and "additional testing was required to determine its cause."  (*Ibid.*)  DCFS did not follow up with results of Gregory's EEG results or any other medical information.  (*Ibid.*)  The juvenile court found that Gregory would be adopted by the potential adoptive parent, and terminated parental rights.  (*Ibid.*)  The finding was reversed on appeal partly because the juvenile court's adoptability finding was not supported by substantial evidence;[3] "[t]he court and the parties were not informed of Gregory's diagnosis or possible diagnoses, prognosis or any needs for treatment or special care."  (*Id.* at p. 15.)  Without this information, "the court was foreclosed from assessing whether each prospective adoptive parent had 'the capability to meet [Gregory's] needs, and the understanding of the legal and financial rights and responsibilities of adoption.'  [Citation.]"  (*Ibid.*)

---

[3]  The court also based its reversal on the fact that there was "conflicting and unclear information regarding the identity of the prospective adoptive parents."  (*Valerie W.*, *supra*, 162 Cal.App.4th at p. 13.)  DCFS was aware that both Vera, the applicant, and Juana, her adult daughter, intended to apply to jointly adopt the children.  (*Ibid.*)  However, DCFS had only assessed Vera's eligibility for adoption and it was unclear whether Vera would be willing to go forward with the adoption if Juana had been found ineligible to adopt.  (*Id.* at pp. 14-15.)

Father concedes that Alejandra is not "burdened by the same developmental difficulties as the child from the *Valerie W.* case." Indeed, there is no indication that the developmental issues noted in February 2014 by Alejandra's former foster mother were so severe as to undermine the finding of adoptability. The child in *Valerie W.* was undergoing tests to rule out a neurological disorder and a host of other medical issues; in contrast, Alejandra was simply referred for a speech and language evaluation. This fact alone does not indicate presence of "significant unaddressed concerns."

Additionally, there is substantial evidence in the record that Alejandra was likely to be adopted within a reasonable amount of time. Despite her prior foster mother's concern regarding her stunted vocabulary, the record shows that Alejandra began making progress with her speech development after she was placed with her prospective adoptive parents. By July 2014, she was "verbalizing more words, such as 'momma[,]' 'daddy[,]' 'thanks[,] and sorry'" and was able to "communicate her basic needs." DCFS's status review report from September 2014 stated Alejandra was demonstrating "normal behaviors for her age." Most importantly, the prospective foster parents, who had been caring for Alejandra since June 2014 and were likely aware of her developmental issues (if any), were eager to start the adoption process. This weighs heavily in favor of a finding that Alejandra was likely to be adopted by Mr. and Mrs. S. or another family. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1312 ["[A] prospective adoptive parent's willingness to adopt generally indicates the child is likely to be adopted within a reasonable time either by the prospective adoptive parent or by some other family"]; see also *In re Michael G.* (2012) 203 Cal.App.4th 580, 592.) We conclude there is substantial evidence to support the juvenile court's adoptability finding.

**DISPOSITION**

We affirm the order.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

                                                 EPSTEIN, P. J.

We concur:

MANELLA, J.

COLLINS, J.