Filed 7/18/16  In re Anthony G. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ANTHONY G. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>             v.<br><br>Y.G.,<br><br>        Defendant and Appellant. | G053124<br><br>(Super. Ct. No. DP022181,<br> DP022303 & DP022304)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Gary L. Moorhead, Judge.  Affirmed.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Jeannie Su, Deputies County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

## INTRODUCTION

Y.G., the mother of the three minors Anthony, Evelyn, and Ebony, appeals from the order of the juvenile court terminating her parental rights. This is not her first involvement with the Orange County Social Services Agency (SSA). After several inconclusive reports beginning when he was a few months old, Anthony was detained in February 2012, when he was two-and-a-half. Twins Evelyn and Ebony were detained at birth in 2012 because of Y.G.'s drug use. After their most recent prior detention, the children were returned to their mother on November 7, 2014. Less than 6 weeks later they were detained again; an Irvine police officer found Evelyn locked outside her house in December, wearing only a T-shirt, while Y.G., indoors, was sleeping off heavy alcohol use.[1]

Because of Y.G.'s previous history with SSA, she was bypassed for reunification services. The children went through several placements before being taken in by a paternal cousin, who was interested in adopting all three. In January 2016, the juvenile court terminated Y.G.'s parental rights, and those of the children's father as well, finding the children generally and specifically adoptable. Only Y.G. has appealed, on the grounds of a lack of sufficient evidence that Ebony is adoptable and the other two children cannot be separated from her.

We affirm the order. Y.G. based her argument of error on the juvenile court's failure to assess Ebony's mental and physical condition as it affected her adoptability. The juvenile court in fact had sufficient evidence to find Ebony at the very least specifically adoptable by the relative who is her current caretaker and who wants to adopt her. There is therefore no need to review the juvenile court's findings regarding Evelyn's and Anthony's adoptability.

---

[1] The children's father was in jail in Oklahoma.

## FACTS

Anthony was born in October 2009.  Evelyn and Ebony were born in March 2012.  SSA received reports of suspected abuse and neglect beginning in May 2010, when Anthony was five months old.  He was detained in February 2012.  The twins were hospitalized and detained at their birth in March 2012, because Y. G. had been taking drugs.

Y.G. and the children received services most recently between May 10, 2012, and September 3, 2014.  In addition to receiving housing, cash, and food stamps, Y.G. participated in several programs, aimed at improving her skills as a mother and getting her off drugs.  The children were detained again in October 2014, after Ebony fell down some stairs and had to have surgery for a serious head injury.[2]  Anthony and Evelyn were returned to their mother on November 7, and Ebony was returned on November 20, 2014.  The case was closed on December 4.

On December 14, an Irvine police officer responded to a report of a child screaming.  He found Evelyn locked outside the house wearing only a T-shirt.  Y.G. was asleep.  She was later determined to have a blood alcohol level of .11 and admitted to drinking a large amount of vodka.  The children were detained again on December 17, 2014, and they went into foster care on January 12, 2015.  They were placed with an extended family member on February 11, 2015.  They went to another foster care placement on March 16.  Finally, in June 2015 they were placed with a paternal cousin, who now wishes to adopt them.

The juvenile court held the disposition hearing on June 24, 2015, at which time the court vested custody in SSA and bypassed both parents for reunification services.  The matter was continued to October 19 for a hearing under Welfare and

---

[2]    Ebony had to have a piece of her skull removed because her brain swelled.  The piece was later reattached in another surgery.

Institutions Code 366.26.[3]  The court also ordered an assessment report under section 361.5 subdivision (g).

In June and July 2015, SSA received reports from the relative caretaker that both Ebony and Evelyn, who were then three years old, were exhibiting sexualized behaviors and making statements indicating they had been sexually abused. Investigations were begun, and in July and August the court ordered further investigation into the reports.  The SSA report for October 19, 2015, informed the court the allegations were unfounded and the investigations were closed.  The children began attending therapy.

At the August hearing, the court ordered a bonding study for Y.G. and the children with the proviso that it not delay the section 366.26 hearing.  An appointment was made for the study, but Y.G. did not show up, and efforts to reach her to reschedule were unavailing.

The court terminated Y.G.'s parental rights in January 2016, finding all three children generally and specifically adoptable.  There was no testimony at the hearing.  The report that included the adoption assessment was admitted into evidence, and the case was argued.

## DISCUSSION

Y. G. has identified only one issue on appeal, the children's adoptability.[4] She asserts that the court erred in finding Ebony adoptable because it did not have sufficient evidence regarding her Factor XIII deficiency and her emotional state. Because the children are a sibling set, the other two children would not be adoptable were this argument well taken.  It is not.

---

[3] All further statutory references are to the Welfare and Institutions Code.

[4] Y. G.'s notice of appeal identified the denial of her section 388 petition as also being appealed, but she has failed to present any evidence, argument, or authority regarding the ruling on this motion.  We therefore treat it as abandoned.  (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

4

We review the juvenile court's findings of adoptability for sufficient evidence. (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732.) We afford the findings the benefit of every reasonable inference and resolve evidentiary conflicts in the judgment's favor. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1232.)

Section 366.26, subdivision (c)(1), provides in pertinent part: "If the court determines . . ., by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." "The issue of adoptability posed in a section 366.26 hearing focuses on the *minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.] Hence, it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent 'waiting in the wings.' [Citations.] [¶] Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*. [Citation.]" (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649-1650.)

According to a report presented to the court, Factor XIII deficiency is a very rare genetic disorder that affects the ability of the blood to clot. Unlike the blood of hemophiliacs, which can clot very slowly or not at all depending on the severity of the disorder, the blood of people with Factor XIII deficiency clots, but because a certain blood protein is missing the clot breaks down, and bleeding starts over again. Accordingly a serious internal injury, such as one to the head, may not be immediately obvious, because noticeable bleeding is delayed. A blood-clotting test will not reveal the presence of Factor XIII deficiency, because the blood does clot; a clot solubility test is needed.

In the first place, it is not certain that Ebony has Factor XIII deficiency. The condition is mentioned first in this record in connection with the surgery performed in January 2015 to reattach the portion of her skull that was removed after her head injury.[5] Between January and June 2015, Ebony's blood work was reported as "clear," with no evidence of Factor XIII deficiency. A report dated August 10, 2015, stated that she had been diagnosed with the disorder and was receiving intravenous infusion therapy. It was also reported that she would need to have these infusions at least once a month. Then in September, her caretaker was informed that Ebony does not have the condition after all. She stopped getting infusions, and further tests were planned. This was the last time the disorder was mentioned in the record. The adoption analysis, included in the report dated October 19, 2015, did not mention Factor XIII deficiency specifically, referring only to "medical conditions."

More importantly, the prospective adoptive parent was fully aware of Ebony's medical history and wanted to adopt her anyway. In fact, Ebony was under the care of the prospective adoptive parent when she had her infusions during the summer of 2015. The prospective parent was also thoroughly familiar with Ebony's head injury and the need to be careful of the activities she engaged in. Thus, even if Ebony's medical issues disqualified her from general adoptability, she was specifically adoptable. Y.G. has identified no legal impediment to adoption. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1526.)

The case on which Y.G. heavily relies, *In re Valerie W.* (2008) 162 Cal.App.4th 1, does not assist her. In that case, one of the children being considered for adoption had an undiagnosed condition, possibly genetic, and thus no one knew what the child's prognosis or needs for special care were going to be. There was no way to tell whether the prospective adoptive parents would be able to meet these needs. (*Id.* at pp. 6,

---

[5] In the record, the condition is referred to as a "Factor VIII Deficiency." This appears to be the same thing.

15.) Here, by contrast, the juvenile court had information about a clearly identified condition – assuming Ebony had it – and substantial evidence that the prospective adoptive parent could cope with the infusions the condition would require. There was also ample evidence that the prospective adoptive parent was fully aware of the consequences of the head trauma that Ebony had suffered while in Y.G.'s care and could take the appropriate precautions.

As for the sexualized behaviors, the allegations of sexual abuse were investigated and determined to be unfounded. The prospective adoptive parent had reported the behaviors and was taking Ebony to a therapist to resolve whatever the issues were. The results of the investigation into possible sexual abuse and Ebony's treatment were before the juvenile court at the termination hearing, so Y.G.'s assertion that the court "ignor[ed]" the problem is contradicted by the record. Y.G. failed to identify any evidence that the outcome of therapy would make any difference in the prospective adoptive parent's willingness to adopt Ebony.

Because we agree with the juvenile court that Ebony was at the very least specifically adoptable, we need not address the court's adoptability findings for Evelyn and Anthony. Y.G.'s sole argument with respect to them was that their adoptability status hinged on Ebony's.

**DISPOSITION**

The order terminating parental rights is affirmed.



BEDSWORTH, ACTING P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.