Filed 7/14/15  In re J.C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re J.C. et al., Persons Coming Under the Juvenile Court Law. | C072429 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.W.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. J36092, J36093) |

Appellant A.W., mother of the minors J.C. and Jo.C., appeals from the juvenile court's orders entered at the six-month review hearing, placing the minors with their father under a plan of family maintenance.  (Welf. & Inst. Code, §§ 366.21, subd. (e), 395; unless otherwise stated, statutory references that follow are to the Welfare and

1

Institutions Code.)  She contends the minors should have been placed with her, absent a finding it would be detrimental to do so, and that it was detrimental to the minors to be placed with father.  She also complains about the adequacy of the social worker's investigation and report.  We shall affirm the juvenile court's orders.

FACTS AND PROCEEDINGS

On October 2, 2011, the Butte Interagency Narcotics Task Force went to mother's home to investigate suspected narcotics violations and to conduct a Drug Endangered Children's investigation.  The officers discovered baggies of methamphetamine in a sweater in mother's closet and in a beanie in her bedroom.  Marijuana was found in a cupboard above the refrigerator, on a desk in the living room, and drying in a living room closet.  A digital gram scale was located in a box on mother's dresser and a used methamphetamine smoking pipe was found in her purse.  Mother admitted that the drugs and paraphernalia belonged to her and was arrested on child endangerment and drug possession charges.  The minors and their two half siblings were detained.

On October 4, 2011, Butte County Department of Employment and Social Services (the Department) filed section 300 petitions on behalf of the minors, then ages five and seven, alleging mother has had a substance abuse problem, primarily methamphetamine and marijuana, since the age of 16 that periodically renders her unable to provide regular childcare.  Petitions were also filed on behalf of the minors' older and younger half siblings, but they are not subjects of this appeal.

A previous dependency case had been commenced in 2002 on behalf of the minors' older half sibling after a methamphetamine lab was found in mother's home. That case was dismissed in 2005.

The section 300 petition alleged that mother had admitted the items found by the task force were hers, admitted she had relapsed in her use of methamphetamine "some time ago" and had last used methamphetamine two days prior, and had been arrested on

2

child endangerment and drug possession charges. The minors' father was alleged to have not provided regular or ongoing support for the minors, and also had a history of alcohol or drug-related criminal activity.

The juvenile court found father to be the minors' presumed father and, on November 17, 2011, found the allegations of the petition to be true and ordered increased visitation for father. Father lived in Salida, which was approximately three hours away. Because father was unable to drive, his mother would travel from San Francisco to bring him to Butte County for his visits twice a week.

The disposition report was filed on December 6, 2011. Father's criminal history was reported to consist of multiple misdemeanors for offenses including possession of stolen property (1994), possession of marijuana (2005), driving under the influence (2005), spousal battery (three convictions in 2006), reckless driving (2007), and petty theft with a prior (2005, 2010).

Visits were going well and mother had already begun participating in services. Mother's boyfriend also began substance abuse treatment and parent education.

Father participated in a drug and alcohol assessment, which resulted in a recommendation he attend a basic awareness drug and alcohol class, drug test randomly, and attend a basic parent support group or class. It was also recommended he continue in his batterer's intervention program, which he was attending in San Francisco as part of probation. Father informed the social worker that he would test "dirty" for marijuana because he had recently used it in accordance with his marijuana prescription. Father had a prescription for marijuana to treat a head injury, but indicated he would look into alternative means to treat his injury.

The minors were at the time of the hearing placed together in foster care but the Department was looking to place them in the home of their maternal aunt and uncle, who resided in Portola. The report recommended the minors remain in out-of-home care and that mother, mother's boyfriend, and father receive reunification services.

On December 22, 2011, the juvenile court authorized placement of the minors with the maternal aunt and uncle in Portola. The court also authorized weekend and extended visits for father.

The disposition hearing took place on January 5, 2012. The social worker had visited father's house and cleared it for placement. They were still waiting for clearance of father's mother and fiancée. Mother was active in services. The juvenile court adjudged the minors dependents of the court and ordered them to remain in out-of-county relative or foster care. The juvenile court authorized weekend and extended visits for mother and her boyfriend.

An oral interim review was held on February 2, 2012. Mother, mother's boyfriend, and father were all participating in their services and programs. The minors and their half siblings were living in their relative placement in Portola and had started an alternating Friday through Sunday weekend visitation schedule, with the minors spending one weekend with father in Modesto (while the half siblings went to mother's), and the other weekend with mother and the half siblings in Oroville. The visits were going well and the social worker was considering moving to unsupervised visits. Father sought placement of the minors with him in Modesto and, although the court authorized it, the court said the placement was not to occur unless counsel was notified and had an opportunity to be heard. The court set another interim review hearing and authorized unsupervised extended and weekend visits with both parents.

The next oral interim review was held on April 26, 2012. The social worker reported that the minors were struggling in school, and were having behavioral problems at school and in their relative home placement. It was determined that they were in need of counseling but there was a waiting list. In addition, the Department was hesitant to start them in counseling if they were going to move soon. The Department also had concerns that the minors were "running wild" after visits with the stepfather (presumably, mother's boyfriend) and that the stepfather yells at the minors in a very mean fashion.

4

Noting that the juvenile court has discretion to place the minors with the previously noncustodial parent and order family maintenance services, the Department requested placement of the minors with father with a reasonable visitation pattern with mother. Father concurred or, alternatively, requested the minors be sent to father on an extended visit so he could enroll them in school.

Mother was opposed to separating the minors from their half siblings and to placement with father until there was "more information on [his] progress and what has actually gone on here." Mother also wanted to hear from minors' counsel regarding the minors' best interests and wanted evidence supporting the Department's representation that the minors were failing in school. Accordingly, mother requested a formal motion and that the matter be set for a hearing. The juvenile court stated that it was inclined to grant an extended visit and placement with father but would give counsel the time to "get all of the information." The juvenile court continued the matter two weeks, directing minors' counsel to consult with the minors in the interim.

The parties returned to court on May 15, 2012. Minors' counsel reported that the minors did not yet have beds at father's residence but that they liked being with both parents and no other concerns were noted. The Department stated it was seeking to place the minors with father. The juvenile court was concerned that it did not yet have father's family history report. It authorized continued extended visits with father but reserved the matter of placement with father for the six-month review hearing.

The contested six-month review hearing commenced on July 24, 2012. Father had completed the family history report. The minors had started extended visits with the parents during the summer, spending alternate weeks with each parent. The social worker had visited father's residence, where he lived in a three-bedroom house with his fiancée and her teenage daughter. The minors had their own room and were getting bunk beds there. Father's counsel informed the court that there was a school across the street

5

from father's residence that was ready to accept the minors for enrollment as soon as the minors are placed with father.

The juvenile court continued the matter to obtain additional information about father's criminal history and medical marijuana usage. Although mother had placement of the minors' two half siblings since June 28, 2012, the court declined placement of the minors with mother due to concerns raised about earlier living conditions in her home and the felony child endangerment offense to which she had recently pled. The court authorized an extended visit with father and enrollment in the school across from father's home. Accordingly, once school commenced in August, father would be bringing the minors to visit with mother every other weekend.

The contested six-month review hearing continued on September 4, 2012. The Department recommended placement with father with family maintenance. The Department reported that the minors were in a stable living environment at father's, were visiting mother twice a month, and were doing well in school. The minors were in first and second grade. The house was clean and had food in it. The minors had their bunk beds in their own room, with enough closet space and their own bathroom. Father's fiancée's mother lived next door, so they had support from her.

Father had a current medical marijuana certificate and used the medical marijuana under the direction of a physician to treat a prior traumatic head injury. Father was working with the doctor to find an alternative treatment to marijuana and planned to stop using marijuana entirely by October 2012 when his prescription expired. The social worker had investigated and was comfortable that father was not using or storing it in the house, which further alleviated the social worker's concerns. Father uses the marijuana at bedtime when he gets headaches. He testified that he had a courier deliver a single marijuana cigarette directly to him in front of his house, after the minors are in bed, and he walks around the block to smoke it.

The six-month review hearing concluded on October 3, 2012. The social worker testified that one of the minors was still having some instances of "shutting down" or acting out in the classroom but that the behavior was improved when he was taken for a walk outside the classroom. Father was active in the school district and appropriately addressing the minor's needs. The other minor was having fewer instances of acting out. The social worker and principal were working together to get some counseling started. With respect to the minors' separation from their half siblings, the minors had mentioned to the social worker that they miss them and like going to see them.

Father had established a routine for the minors, consisting of a set wake up time, post school homework time, playtime, and bedtime. Father ensured the minors brushed their teeth in the morning and after dinner--as the older minor had fully capped teeth and the younger minor's teeth were also "not the best." At bedtime, father sometimes read to the minors and he personally put them into bed and patted them to sleep. The minors did not yet have household chores but were responsible for keeping their rooms clean. They looked forward to school and were developing relationships with their classmates. The younger minor was excited to be going to a birthday party for a friend for the first time. Father had taken a parenting class and completed a 52-week batterer's program. He believed he had addressed his anger control issues and now uses walking as a technique to dissipate his anger.

Father testified that the minors looked forward to their visits with mother and their half siblings. They were also free to have telephone contact with mother between visits, but they had not had any. The minors' 13-year-old half sister testified that she enjoyed the visits but missed the minors and wanted to see them a little bit more than just for two days. She helped take care of them a lot over the years. She said that her younger sister also missed them and cried when they left after visits. She also said that the minors have told mother during visits to "call the lawyer so they can stay longer or they can move

7

back." Prior to their detention, the minors had always lived with her and her sister and shared holidays together.

The juvenile court commented that the minors were removed from mother due to her methamphetamine use and that it was the second time she had had minors removed from her custody for that reason. Both parents had complied with the Department and the services provided. The court found that foster care was no longer appropriate, that father was the noncustodial parent and that there was no detriment in keeping them placed with him in a plan of family maintenance. The court noted that the minors had not been doing well while in foster care in Portola. They were now in a new school and father was doing well in establishing a routine for the minors. The court ordered the minors placed with father with family maintenance services and set the matter for a review hearing. The minors were to spend the majority of holiday time with mother.

DISCUSSION

I

*Return of Minors to Parental Custody*

Mother contends the juvenile court was required at the six-month review hearing to return the minors to *her* in the absence of finding detriment to the minors in doing so. The premise of her argument is that, as the previously custodial parent of the minors, section 366.21, subdivision (e) demands that the minors be returned to her, not the previously noncustodial father. It follows, she argues, that the juvenile court's failure to find detriment to the minors should they be returned to her, prior to placing the minors with father, was reversible error. As support for this proposition, she relies upon the language of section 366.21, subdivision (e).

"Section 366 requires that the 'status of every dependent child *in foster care* shall be reviewed . . . no less frequently than once every six months.' (§ 366, subd. (a), italics added.) That section also identifies specific issues to be considered at review hearings,

8

including, for example, the safety of the child, the continuing necessity for and appropriateness of the placement, the extent of the agency's efforts to return the child to a safe home, and the progress that has been made toward alleviating the causes requiring the placement in foster care. (*Ibid.*) Additional guidelines pertaining to specific review hearings (i.e., the 6-, 12-, and 18-month reviews) are set forth in subsections of section 366." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 263.)

Section 366.21, subdivision (e) provides, in pertinent part: "At the review hearing held six months after the initial dispositional hearing, but no later than 12 months after the date the child entered foster care . . . , the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."

Read in context, section 366.21, subdivision (e) provides for return of a minor to parental custody, *from foster care*, unless return of the child would create a substantial risk of detriment to the minor. There is no preference or presumption with respect to a return to either parent. A "nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child.' " (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 697.) Mother, as the previous custodial parent, whose actions brought the minors within the jurisdiction of the court in the first place, has no greater right of custody than the nonoffending father. The statute's use of the word "return" does not render the statute applicable only to the home of removal. The statute requires return to *parental* custody. (See *In re Nicholas H.*, *supra*, 112 Cal.App.4th at pp. 266-268.)

Indeed, section 361.2, subdivision (a) expressly provides for placement of a minor with an earlier noncustodial parent. Under that section, "[w]hen a court orders removal

9

of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child.  If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).)

Mother argues that section 361.2 was inapplicable here because the statute applies only at the time of disposition.  We must disagree.  "Even though section 361.2, by its terms, applies when the court first takes jurisdiction of a child, its procedures can be invoked at the six-month and 12-month review hearings, as occurred here." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1451.)  In fact, the California Rules of Court specifically contemplate the application of section 361.2 procedures when the child is placed with the previously noncustodial parent at subsequent review hearings, and expressly provide for placement with the noncustodial parent at the six-month review hearing.

California Rules of Court, rule 5.708 provides in part:

"(k) *Placement with noncustodial parent (§ 361.2)*
*If at any review hearing the court places the child with a noncustodial parent*, or if the court has previously made such a placement, the court may, after stating on the record or in writing the factual basis for the order:

"(1) Continue supervision and reunification services;

"(2) Order custody to the noncustodial parent, continue supervision, and order family maintenance services; or

"(3) Order custody to the noncustodial parent, terminate jurisdiction, and direct that *Custody Order--Juvenile--Final Judgment* (form JV-200) be prepared and filed under

10

rule 5.700." (Cal. Rules of Court, rule 5.708, italics added.) Those options parallel those set forth in section 361.2, subdivision (b).

California Rules of Court, rule 5.710 provides:

"(b) Determinations and conduct of hearing (§§ 364, 366, 366.1, 366.21)

"At the hearing, the court and all parties must comply with all relevant requirements and procedures in rule 5.708, General review hearing requirements. The court must make all appropriate findings and orders specified in rule 5.708 and proceed as follows:

"(1) *Order return of the child or find that return would be detrimental*

"The court must order the child returned to the custody of the parent or legal guardian unless the court finds that the petitioner has established by a preponderance of the evidence that return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The requirements in rule 5.708(d) must be followed in establishing detriment. The requirements in rule 5.708(e) must be followed in entering a reasonable services finding. If the child is returned, the court may order the termination of dependency jurisdiction or order continued dependency services and set a review hearing within 6 months.

"(2) *Place with noncustodial parent*

"*If the court* has previously placed *or at this hearing places the child with a noncustodial parent, the court must follow the procedures in rule 5.708(k) and section 361.2*."
(Cal. Rules of Court, rule 5.710, italics added.)

"At the [6-] 12- and 18-month permanency and permanency review hearings in a section 361.2, subdivision (b) case in which both parents have been provided services, a finding that the child can safely be returned to the parent from whom custody was removed does not automatically entitle that parent to custody of the child. Instead, such a finding qualifies the parent to receive custody. As we have explained, the risk of

11

detriment assessment and the need for continuing supervision inquiry are valid and relevant considerations when the juvenile court makes a custody decision in a section 361.2(b)(2) case. However, the court must still decide which parent should receive custody of the child by considering the best interests of the child." (*In re Nicholas H.*, *supra*, 112 Cal.App.4th at p. 268.)

In sum, we hold that the return requirement in section 366.21, subdivision (e), i.e., that the juvenile court return the minors to the physical custody of their parent or legal guardian absent a finding of detriment, does not preclude placement of the minors with the previously noncustodial father, even when there has been no finding of detriment in returning the minors to the previously custodial mother. Instead, it requires the juvenile court return the minors from foster care to parental custody, unless it finds return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the minors. If, as here, the previously noncustodial father seeks custody, return to his physical custody is appropriate, even if return to mother's physical custody would no longer be detrimental, if the juvenile court finds it is in the best interests of the minors.

With this holding in mind, mother's principal contention, that the failure to find detriment to the minors if they were returned to her, requires remand, fails. Even assuming a favorable finding--that return to mother's custody would not create a substantial risk of detriment to the minors--the finding would not control the outcome. The dispositive inquiry in properly determining physical custody was the best interests of the minors. (*In re Nicholas H.*, *supra*, 112 Cal.App.4th at p. 268.) Thus, the failure to make a finding regarding detriment with respect to mother does not require reversal.

## II

### *Placement With Father*

Mother argues that the evidence established placement with father would be detrimental to the minors. If true, placement with father would be improper under section 361.2 and would be contrary to the minors' best interests.

When the juvenile court has made a custody determination in a dependency proceeding, " 'a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272, quoting *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)

We disagree that the evidence established that placement with father would be detrimental to the minors and find no abuse of discretion in the juvenile court's placement of the minors with him.

### Minors' Placement With Father

In support of her position that placement with father is detrimental to the minors, mother emphasizes, as she did in the juvenile court, that she had completed all the services requested of her and father had done "minimal services," consisting only of domestic violence and parenting services. However, the evidence reflects that father, like mother, did all that was asked of him.

Father participated in a drug and alcohol assessment, which resulted in a recommendation he attend a basic awareness drug and alcohol class, drug test randomly, and attend a basic parent support group or class. The social worker reported that he had

13

been compliant in participating in these services. Father had been proactive in participating in services, including completion of a parenting class. Although there was testimony that father did not provide regular drug tests, father had admitted that he would continue to test "dirty" because of his medical marijuana usage. It had been recommended father continue in his batterer's intervention program, which he completed on July 20, 2012. Father articulated during his testimony what he had learned in the program, including insight into how he presents himself and reacts to things, as well as how he has modified his behavior to address his anger control issues. The batterer's intervention program also addressed issues of drug and alcohol use. Father was compliant with the terms and conditions of his probation and his probation officer had no concerns.

Moreover, mother's argument that father participated in minimal services ignores that father is the nonoffending, noncustodial parent. And while the social worker had not yet completed his investigation so as to place the minors with father by the time of disposition, there were never any allegations supporting jurisdiction with respect to father. As we previously stated, father, as a nonoffending parent, has a constitutionally protected interest and statutory right to assume physical custody of the minors, in the absence of clear and convincing evidence that it would be detrimental to their safety, protection, or physical or emotional well-being. (§ 361.2; *In re Isayah C., supra,* 118 Cal.App.4th at pp. 697, 699-700.) There was not clear and convincing evidence that father posed a risk to the minors' safety, protection, or physical or emotional well-being.

With respect to father's medical marijuana usage, to which mother takes issue, father testified that he only used the marijuana after the minors were in bed, had it delivered in single use dosages, and did not keep any in the house. He also testified that he was working with his physician to find an alternative to the marijuana. The Department was satisfied that father's manner of usage did not pose a risk to the minors. With respect to father's criminal history, we note that a criminal history, without more,

14

does not prove a person to be unfit to have custody of his children. (See *In re James M.* (1976) 65 Cal.App.3d 254, 265-266; see also *In re Baby Girl M.* (2006) 135 Cal.App.4th 1528, 1539-1545.)

Finally, we consider the evidence that father had been providing a stable home for the minors while on their extended visit. He had established a routine for the minors (consisting of a set wake up time, post school homework time, playtime and bedtime), ensured they brushed their teeth in the morning and after dinner, and tucked them into bed at night. The minors, who had previously struggled in school, now looked forward to school and were developing relationships with their classmates. Although father was unable to drive, he was the minors' primary caregiver and had ample support from other individuals to provide any needed transportation.

Minors' Placement Apart From Half Siblings

Mother also contends the juvenile court neglected its duty to consider the minors' relationship with their half siblings, and the impact of their separate placements. She argues it was detrimental to place the minors' with father and away from their half siblings.

The issue of the minors' relationship with their half siblings was clearly in front of the juvenile court at the time of the six-month review hearing. Mother's counsel made extensive argument regarding the minors' relationship with their half siblings and argued that they should not be separated. Although the juvenile court ultimately ordered placement with father, it recognized the minors' sibling relationship and, in that regard, expressly found that visitation with the minors' siblings would serve their best interests and authorized visitation. The visitation arrangement provided that the minors would spend the majority of holidays with their half siblings, as they had in the past. Thus, it is clear that the juvenile court did consider the minors' relationship with, and separation

from, their half siblings and found that the placement order would not be detrimental to the minors. The evidence does not mandate a different conclusion.

Mother also argues that the juvenile court did not make the proper findings regarding the nature of the minors' sibling relationships. She argues that specific findings regarding sibling issues are required by section 366.

Section 366 provides for the review of minors in foster care and sets forth certain matters that must be considered by the court. Those considerations focus on the status of the case, i.e., necessity and appropriateness of placement; the Department's compliance with the case plan to either return the minor home or finalize a permanent plan; limitations on the parent's rights to make educational decisions for the minor; sibling issues; and progress toward mitigating the causes which led to foster care. (§ 366, subd. (a)(1)(A-E).) Here, the minors here were not continued in foster care but returned to parental custody. Accordingly, it is not clear the considerations in section 366, subdivision (a)(1)(A-E) apply.

In any event, mother did not object to the form of the findings and orders or argue that the findings and orders should contain specific language regarding the nature of the relationship of the siblings or the impact of their separation. Thus, to the extent that mother's arguments attack the language of the findings and orders, the challenge is forfeited for failure to assert the matter in the juvenile court. (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 501-502; *In re Christopher B*. (1996) 43 Cal.App.4th 551, 558.)

III

*Inadequate Investigation of Father*

Finally, mother contends the social worker failed to undertake an adequate investigation regarding father, and failed to provide adequate reports to the juvenile court. We find no error.

16

Section 366.21, subdivision (c) requires the social worker to prepare a report prior to each review hearing "regarding the services provided or offered to the parent or legal guardian to enable him or her to assume custody and the efforts made to achieve legal permanence for the child if efforts to reunify fail, . . .; the progress made; and, where relevant, the prognosis for return of the child to the physical custody of his or her parent or legal guardian; and shall make his or her recommendation for disposition. If the child is a member of a sibling group described in subparagraph (C) of paragraph (1) of subdivision (a) of Section 361.5, the report and recommendation may also take into account those factors described in subdivision (e) relating to the child's sibling group." (§ 366.21, subd. (e).)

Similarly, California Rules of Court, rule 5.708(c) requires that, "[b]efore the hearing, the social worker must investigate and file a report describing the services offered to the family, progress made, and, if relevant, the prognosis for return of the child to the parent or legal guardian.

"(1) The report must include:

"(A) Recommendations for court orders and the reasons for those recommendations;

"(B) A description of the efforts made to achieve legal permanence for the child if reunification efforts fail; and

"(C) A factual discussion of each item listed in sections 366.1 and 366. 21(c)." (Cal. Rules of Court, rule 5.708(c).)

It is not disputed that the social worker did, in fact, file a report. Mother's complaint is that certain items were not properly investigated or included in the written report.

Citing section 366.21, subdivision (e), mother argues extensively that the report *must* address numerous delineated sibling-related factors set forth therein. The statutory language to which mother cites, however, is applicable when the court is "making its

determination to schedule a hearing pursuant to Section 366.26 for some or all members of a sibling group." (§ 366.21, subd. (e).) That, of course, is not the procedural posture here. The *applicable* language in section 366.21, subdivision (c), quoted above, states that "the report and recommendation *may* also take into account those factors described in subdivision (e) relating to the child's sibling group." (§ 366.21, subd. (c), italics added.)

Mother also emphasizes that the juvenile court had indicated, after the filing of the social worker's written report, that it needed additional information regarding the "situation" with his fiancée (including how long he had been with her), father's other children, how the minors were doing, and whether father was smoking marijuana in front of the minors. The social worker, however, provided two subsequent oral reports *and* testimony to supplement his written report. Father also testified at the review hearing. After the court's statements that it needed additional information, father testified that he had been seeing his fiancée for a year and a half and living with her for a year.

The social worker confirmed that father had visitation with two of his other children but, by agreement, did not have contact with his special needs child. Subsequent updates were provided by both the social worker and father as to how the minors in this case were doing. And father testified that he had his marijuana delivered in single doses and did not keep any in the house. Thus, additional information was provided to the court to assist it in making its findings and orders. (See *In re John F.* (1994) 27 Cal.App.4th 1365, 1378.)

Mother also argues the social worker failed to obtain relevant information about father such as asking father's probation officer what were the specific terms of father's probation (concerning which the probation officer indicated father was in compliance) or talking to father's physician who prescribes father medical marijuana. Mother fails, however, to identify what critical information she thinks the social worker should have gained from such inquiries. Mother also complains that the social worker did not ask

18

father where he keeps his marijuana, but father testified that he had the marijuana delivered in single doses and did not keep any in the house. Thus, that relevant information was available to the court.

Mother complains the social worker did not have father participate in drug or mental health assessments, but father *did* participate in a drug assessment and there was no indication that (the nonoffending) father was in need of a mental health assessment. He was completing his batterer's intervention program, which had been recommended. We do not find mother's complaints to signify a breach of the social worker's duty to investigate. (See *In re John F., supra,* 27 Cal.App.4th at pp. 1377-1378 [the Department has duty, in rendering its report and recommendation, not to mask problems in obtaining information but to apprise court of all relevant facts and circumstances concerning the child].)

The social worker's written report, along with the subsequent oral reports and testimony, substantially complied with the statutory requirements. The court was provided with information regarding the services that had been provided, the progress made, and a recommendation of return of the minors to father's custody.

We do not find the report or underlying investigation to be fundamentally flawed. Deficiencies in an assessment report prepared by a county adoption agency for a permanency plan hearing go to the weight of the evidence. (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 413; c.f., *In re Valerie W.* (2008) 162 Cal.App.4th 1, 14.) Here, although the juvenile court had continued the matter to obtain additional information, by the conclusion of the hearing, it was evidently satisfied that it had sufficient information to make its findings and orders. The record does not compel a finding to the contrary.

Mother also contends the "inadequacy of the social worker's report and lack of investigation" deprived her of due process. Mother, however, failed to bring to the juvenile court's attention her assertion that principles of due process required a more thorough social worker's report. Had she done so, the court could have considered her

19

claim and, if it found her due process argument meritorious, required a new report be prepared prior to making its findings and orders.  A party may not assert theories on appeal which were not raised in the trial court.  (*Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1489.)  Mother forfeited the right to assign constitutional error on appeal.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 222.)

DISPOSITION

The orders of the juvenile court are affirmed.


      HULL      , Acting P. J.


We concur:


      MURRAY     , J.


      HOCH      , J.